**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| HALEY KING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-03-1295 |
| | § | |
| | § | |
| CONROE INDEPENDENT SCHOOL | § | |
| DISTRICT, DON STOCKTON, | § | |
| Individually, and FELICIA SHUPP, | § | |
| Individually | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Plaintiff, Haley King, sued the Conroe Independent School District ("CISD"); a former CISD coach, Felicia Shupp; and a former CISD principal, Don Stockton.  King alleged that when she was a fourteen year-old eighth-grade student,  Shupp, a coach of the girls' volleyball team at the junior high school King attended, engaged her in a sexual relationship that continued for three years.  King alleges that CISD violated Title IX, 20 U.S.C. § 1681, because school district employees with supervisory authority over Shupp knew of the sexual relationship and failed to end it.  (Docket Entry No. 46).  In September 2004, this court dismissed King's claim against Stockton, asserted under 42 U.S.C. § 1983, based on qualified immunity.[1]  CISD then moved for summary judgment, arguing that the asserted Title IX claim fails, as a matter of law, because the undisputed evidence shows that

---

[1] This court found that Stockton was entitled to qualified immunity under *Doe v. Taylor*, 15 F.3d 443 (5th Cir. 1994). (Docket Entry No. 37).

Stockton was the CISD employee who exercised supervisory authority over Shupp and this court found that Stockton did not have actual knowledge of the sexual relationship and did not respond with deliberate indifference, precluding liability as a matter of law. (Docket Entry Nos. 39, 50).  King responds by arguing that there are triable issues of fact as to CISD's liability based on the knowledge and response of five school district employees other than Stockton who potentially had supervisory authority over Shupp.  King alternatively seeks an extension of time under Rule 56(f) to conduct additional discovery to determine the knowledge of these individuals and whether they had the authority over Shupp necessary to impose liability on CISD for their failure to stop the abuse.  (Docket Entry No. 46).

Based on the pleadings; the motions, responses, replies; the summary judgment record; and the applicable law, this court denies King's motion for an extension of time and grants CISD's motion for summary judgment.  Counsel for defendants is to submit a statement identifying any remaining issues or a proposed form of final judgment, no later than August 12, 2005.  The reasons for these rulings are set out below.

## I.    Background

The background facts, set out in full in this court's earlier summary judgment opinion, are only summarized here.  In the 1997-1998 school year, King was a student at CISD's McCullough Junior High School.  Stockton was the school principal and Gale Drummond was the assistant principal.  King played on the school volleyball team; Felicia Shupp was King's volleyball coach.  Shupp was married and lived with her husband William Shupp, who coached at another CISD school. (Docket Entry No. 32, Ex. G).  Shupp's mother,

Ginger Leflar, was a teacher at another CISD middle school.  (Docket Entry 32, Ex. A, H-10).  After the 1997-1998 school year ended, Shupp's relationship  with King  progressed and eventually led to frequent sexual encounters, all outside school.

In the fall of 1998, Ruth Stayton, the parent of another McCullough Junior High student, told Stockton that she had heard from her son and his friend that a female coach and a female student were having an "affair" and that the son's friend had stated that she had seen the coach and the student kissing.  Stockton stated that he was unaware of any such inappropriate relationship and that he would speak with Shupp.  Stockton summoned Shupp to a meeting that Gale Drummond, the assistant principal, attended.  Drummond and Stockton asked Shupp if she was having an inappropriate relationship with a student; Shupp denied any impropriety.  Stockton and Drummond warned her to keep her relationships with students professional at all times. (Docket Entry No. 27, Ex. B).  The relationship, however, persisted after King began attending The Woodlands High School.

During the 1999-2000 school year, King was a tenth-grade student at The Woodlands High School.  Shupp continued to coach at McCullough Junior High School.  Stockton had left his position at McCullough Junior High and had become principal of The Woodlands High School.  (Docket Entry No. 32, Ex. A, p.2).  In 2000, Shupp applied for the position of girls' junior varsity volleyball coach at The Woodlands High School.  Teresa Hinojosa, the girls' varsity coach at The Woodlands High School, recommended Shupp for the position.  Hinojosa relayed her recommendation to Weldon Willig, an athletic director at The Woodlands High School.  Willig arranged for Shupp to interview with him and Karen

Heintz, another athletic director at the school.  Shupp was not hired for the coaching position.
(Docket Entry No. 32, Ex. D).  Shupp later applied for a position as an English teacher at The
Woodlands High School, but was unsuccessful.   Shupp resigned from McCullough Junior
High in the summer of 2000.  Later that fall, Shupp accepted a position at a CISD middle
school, teaching English.

The sexual relationship between King and Shupp continued through 2001.  King
reported Shupp's behavior in January 2002.  Shupp pleaded guilty to sexual assault of a
child.  (Docket Entry No. 32, Ex. I).  King filed this lawsuit in April 2003 against CISD,
Stockton, and Shupp.  In her first amended complaint, King asserted causes of action against
Stockton under 42 U.S.C. §1983. (Docket Entry No. 9).  After discovery targeted to the
qualified immunity defense, Stockton moved for summary judgment.  This court dismissed
the claim against Stockton on the basis that undisputed facts in the record showed that
Stockton did not have sufficient knowledge of the sexual relationship to make his failure to
take further action deliberate indifference to King's constitutional rights.

CISD then moved for summary judgment, arguing that this court's determination that
Stockton was entitled to qualified immunity effectively disposes of King's Title IX claim
against the school district.  CISD argues that because Stockton was the CISD official who
exercised supervisory authority over Shupp, she cannot make the showing necessary to
impose liability on CISD under Title IX.   (Docket Entry No. 39).  King argues that "neither
statute nor case law expressly states or even suggests that a principal is the only employee
of a school district which may trigger the school district's liability under Title IX." (Docket

Entry No. 46, p. 15).  King asserts that there are triable issues of fact as to whether five school district employees had the requisite authority over Shupp and knowledge to trigger CISD's liability.  King identifies Ginger Leflar, a CISD teacher at another CISD middle school and Felicia Shupp's mother; an unidentified CISD employee who worked at the office at McCullough Junior High and spoke to Ruth Stayton; Gail Drummond, the McCullough Junior High assistant principal who attended the 1998 meeting with Shupp and Stockton; and Weldon Willig and Karen Heintz,  the athletic directors at The Woodlands High School who interviewed Shupp when she applied for the junior varsity coaching position in 2000.

CISD argues that King has failed to raise a disputed fact issue material to determining whether an appropriate CISD official had actual knowledge of the sexual relationship and failed to take appropriate action to end it.  Each argument and response is examined below.

## II.    The Applicable Legal Standards

### A.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  Under FED. R. CIV. P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,  477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the

opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir.2003) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chemical Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 305 (5th Cir.2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.,* 333 F.3d 566, 568 (5th Cir.2003).

Affidavits supporting or opposing summary judgment must "set forth facts that would be admissible in evidence." FED. R. CIV. P. 56 (e); *see Love v. Nat'l Med. Ctr.*, 230 F.3d 765, 776 (5th Cir. 2000). "Statements constituting hearsay are not competent summary judgment

evidence." *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 510 (5th Cir. 2001) (citing *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)).   Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial.  *See Pegram v. Honeywell, Inc.,* 361 F.3d 272, 285 (5th Cir. 2004).

   In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Cabillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255.  "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(quoting *Celotex*, 477 U.S. at 322).

### B.    The Title IX Standard

   Title IX provides in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).  As a recipient of federal funds, a school district may be liable for damages under Title IX.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998); *see Doe v. Lago Vista Indep. Sch. Dist.*, 106 F.3d 1223, 1225 (5th Cir. 1997).  "[S]exual harassment of a student by a teacher constitutes actionable discrimination for the purposes

of Title IX." *Franklin v. Gwinnett County Public Sch.,* 503 U.S. 60, 75 (1992); *see also Rosa H.  v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 653) (5th Cir. 1997) (holding that "minor students who have been subjected to a sexual relationship with their teachers have a private cause of action for monetary damages" under Title IX).

A Title IX plaintiff cannot recover damages "against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice. " *Gebser,* 524 U.S. at 285; *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981).  To recover damages for a teacher's sexual harassment of a student requires a showing that: (1) a school district employee with supervisory power over the offending teacher; (2) had actual knowledge of the harassment; and (3) responded with deliberate indifference. *Gebser,* 524 U.S. at 290.  "[T]o qualify as a supervisory employee whose knowledge of abusive conduct counts as the district's knowledge, a school official must at least serve in a position with the authority to 'repudiate that conduct *and* eliminate the hostile environment' on behalf of the school district." *Rosa H.,* 106 F.3d at 661 (quoting *Nash v. Electrospace System, Inc.,* 9 F.3d 401, 404 (5th Cir. 1993)).  Notice of teacher-student harassment to employees who have no authority beyond reporting the misconduct to other school district employees is insufficient to expose a school district to Title IX liability. *Id.*

"[T]he plaintiff in a Title IX damages suit based on a teacher's behavior must prove actual knowledge of misconduct . . . and must also prove that the officials having that knowledge decided not to act on it." *Delgado v. Stegall,* 367 F.3d 668, 674 (7th Cir. 2001). The "actual knowledge" requirement is based on the subjective standard that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rosa H.,* 106 F.3d at 658 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  An official decision by the school district not to remedy the violation requires that the supervisory employee's response "amount to deliberate indifference to discrimination." *Gebser,* 524 U.S. at 290; *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999) (defining Title IX deliberate indifference standard for student-to-student harassment as when the "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances"). School officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, even if the response is unsuccessful.  *See Doe v. Dallas Indep. Sch. Dist.,* 220 F.3d 380, 384 (5th Cir. 2000), *cert. denied,* 531 U.S. 1073 (2001). What constitutes appropriate remedial action for allegations of discrimination in Title IX cases depends on the particular facts of each case.  *Id.* (citations omitted).

## III.    School Officials with Authority and Knowledge

The parties dispute the effect of this court's determination that Stockton, the principal at McCullough Junior High from 1997 to 1999 and The Woodlands High School in 2000,

was entitled to qualified immunity.  CISD argues that Title IX actions fail as a matter of law when the appropriate supervisor did not commit the underlying constitutional violation by acting with deliberate indifference to known sexual harassment of a student.  (Docket Entry No. 39).  King responds that there are fact issues as to whether five other CISD employees had supervisory power over Shupp, knew about the sexual relationship, and responded with deliberate indifference.

This court cannot conclude that Stockton's qualified immunity, as a matter of law, entitles CISD to summary judgment.  The case law does not limit the employee who may trigger a school district's liability under Title IX to the principal.  School districts are liable if "an *employee* who has been invested by the school board with supervisory power over the offending employee actually knew of the abuse, had the power to end the abuse, and failed to do so." *Gebser,* 524 U.S. at 280 (emphasis added).  "[S]chool districts contain a number of layers below the school board: superintendents, principals, vice-principals, and teachers and coaches, not to mention specialized counselors such as Title IX coordinators.  Different school districts may assign different duties to these positions or even reject the traditional hierarchical structure altogether." *Rosa H*., 106 F.3d at 660.  Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry.  The issue is whether the summary judgment record creates a genuine issue of disputed fact material to determining whether a CISD employee with supervisory authority to end the abuse or to institute corrective measures on CISD's behalf had actual notice of the sexual relationship and responded with deliberate

indifference.  *See Dallas Indep. Sch. Dist.*, 220 F.3d at 384; *Gebser*, 524 U.S. at 280.  If the record does not raise such an issue, the issue is whether King is entitled to a continuance under Rule 56(f) to conduct further discovery before the motion is decided.

### A.        The CISD Teacher

Ginger Leflar, who is Felicia Shupp's mother, teaches at a CISD middle school.  King argues that because Texas law and CISD policy impose a duty to report child abuse on teachers, *see* TEX. FAM. CODE. ANN. § 261.101(a), a teacher such as Leflar can be a supervisory official who can trigger CISD's liability under Title IX.

The case law precludes King's argument.  In *Rosa H*., the Fifth Circuit held that a school district's liability under Title IX for teacher-student sexual harassment requires a showing that a school district employee invested by the school board with the duty to supervise the teacher and the power to take action that would end such abuse actually knew of the abuse and failed to end it.  As the court explained, merely having the duty to report suspected abuse does not make a teacher or school employee one with the kind of supervisory authority that can expose a school district to liability under Title IX:

> [The Title IX] inquiry circumscribes those employees in the chain of command whom the school board has appointed to monitor the conduct of other employees and, *as distinguished from reporting to others*, remedy the wrongdoing themselves. [This standard ensures] the board's liability and practical control are sufficiently close to reflect its intentional discrimination.  *It does so by omitting the bulk of employees, such as fellow teachers, coaches, and janitors, unless the district assigned them both the duty to supervise the employee who has sexually abused a student and also the power to halt the abuse.*

*Rosa H.*, 106 F.3d at 660 (emphasis added).  The Supreme Court affirmed this standard in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. at 280.  King's reliance on the obligation of CISD employees and teachers to report suspected sexual harassment of students does not raise a fact issue as to CISD's liability under Title IX based on Ginger Leflar's actions or inactions with respect to Shupp's relationship to King.

The undisputed facts in the record show that Leflar was a teacher at another CISD middle school, with no official supervisory power over Shupp.  Although the record does contain evidence that Leflar saw King and Shupp together in intimate circumstances in the winter of 1999,[2] a school district official's knowledge of a sexual relationship is insufficient to raise a fact issue as to the school district's liability; evidence that the official also had a duty to supervise the harassing teacher is also required.  A school district is not liable under Title IX for a teacher's harassment of a student if the official with actual knowledge of the abuse is another teacher, to whom the school board has given no supervisory authority over the harasser.  *Canutillo Independent School District v. Leija*, 101 F.3d 393, 401 (5th Cir. 1996)(to trigger liability the official must have "authority over employees, including, perhaps, the power to hire, fire, or discipline").  The undisputed facts in the record show that

---

[2]  King states that in the winter of 1999, she was with Shupp at the home of Shupp's parents. Leflar walked into a bedroom where King and Shupp were engaging in sexual acts. King describes a later conversation between Felicia and Leflar as follows: "Felicia confronted her mom, and from what Felicia told me, her mom told her that she was playing with fire and she was going to get burned.  She told Felicia that she needed to stay away from me because if that got out her life would be ruined." (Docket Entry 27, Ex. A–1, p.3).

as a matter of law, Leflar is not a supervisory official whose knowledge of Shupp's abuse of King could lead to CISD's liability.

### B.    The Unidentified School Official

King asserts that the unidentified employee in the McCullough Junior High School office might have both knowledge of the abuse and authority to address it, which could raise a disputed fact issue material to CISD's liability under Title IX.  The record shows that before Stayton relayed what she had heard from her son's friend to Stockton, she relayed the story to an unidentified office employee and asked who was the best person to tell.  The unidentified office employee told Stayton to talk to Stockton.

The relevant portion of Stayton's deposition states:

> A:    Shortly after first hearing the disturbing conversation between my son and his friend, but prior to the morning I spoke to Dr. Stockton, I went to the school office.  I mentioned what I'd heard to another person in that school office.  I was concerned about the matter and asked this person what I should do.  That person said, if there was someone to tell, it was Dr. Stockton. . . . I believe the conversation I had with the person was over the telephone.  In fact, I know that it was.

(Docket Entry No. 36, Ex. A, p. 106).  Stayton's testimony does not suggest that this office employee had any supervisory authority to act on an allegation of teacher misconduct.  To the contrary, her testimony is that the employee referred Stayton to Stockton and identified him as the person with the responsibility and authority to respond to the situation.  Moreover, the record evidence is that Stayton relayed the same information to the employee that she later relayed to Stockton.  This court has already concluded that Stayton's reported concerns

did not raise a fact issue that Stockton had actual knowledge of a sexual relationship between King and Shupp.

There is no evidence in the record to raise a fact issue as to whether the office employee had supervisory authority over Shupp or had actual knowledge of Shupp's abuse. *See Doe v. Dallas I.S.D.*, 153 F.3d 211, 218, n. 7 (5th Cir. 1998) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion . . . .") (quoting *Ruiz v. Whirlpool*, 12 F.3d 510, 513 (5th Cir. 1994)).  The CISD office employee does not, as a matter of law, qualify as a school official whose authority and knowledge could expose CISD to Title IX liability.

### C.    The Woodland High School Athletic Directors

King asserts that William Willig and Karen Heintz, two athletic directors at The Woodlands High School, had supervisory authority over Shupp and that there are genuine issues of disputed fact material to determining whether they had actual knowledge of the sexual relationship and responded adequately.  King relies on much of the same evidence that this court previously found insufficient to raise a fact issue as to whether Stockton knew of the sexual abuse, Hinojosa's affidavit that describes Willig's initial enthusiasm for Shupp and Heintz's change in behavior toward King after the decision not to hire Shupp. *See Dallas Indep. Sch. Dist.*, 220 F.3d at 382 ("[G]iven the factual development that took place . . . with respect to the § 1983 claims against DISD and [the principal], we can say that if Plaintiffs

can produce no additional evidence, Defendants will be entitled to summary judgment on the Title IX claim.").

In 2000, while Shupp was teaching at McCullough Junior High School, she applied for the junior varsity coaching position at The Woodlands High School.  Stockton was the principal and Willig and Heintz were the athletic directors.  King previously argued that Stockton exercised a de facto veto over Shupp's application for junior varsity girls' volleyball coach and later refused to hire her for an English teaching position.  King relied on a statement in Stockton's affidavit that a CISD principal is involved in every hire at his or her school, as well as the affidavit of Teresa Hinojosa, the varsity coach at The Woodlands High School.  (Docket Entry No. 32, Ex. F, 49-50).[3]  In her affidavit, Hinojosa stated that Willig initially supported her recommendation that Shupp be hired for the junior varsity position.  After talking to Shupp, Willig told Hinojosa that Shupp would not be hired.  Hinojosa stated that: "[i]n reflecting on the matter now, given the allegations that have been made, I believe that when Don Stockton got involved with the interview process, something happened."  (Docket Entry No. 32, Ex. D).  This court concluded that the decisions made by Stockton and the athletic directors that Shupp would not be hired at The Woodlands High School in 2000 did not raise a fact issue that Stockton knew of the sexual relationship between King and Shupp.

---

[3]  This court has already concluded the statement in William Shupp's affidavit, in which he stated that Shupp told him that Willig and Heintz told Shupp they did not think it would be a good idea for Shupp to work at the same campus where King attended school, is inadmissible hearsay.  (Docket Entry 37, pp. 17-19).

In response to CISD's motion for summary judgment, King submitted a second affidavit from Teresa Hinojosa dated December 23, 2004.  The December 2004 affidavit is almost identical to the first affidavit, with the addition of the following statements:

> I can additionally testify that Weldon Willig and Karen Heintz could do just about what they wanted in their positions as Men's and Women's Athletic Directors, and generally had a free hand with athletics at The Woodlands High School, including decisions and assignments of personnel, (coaches).
>
> Weldon Willig and Karen Heintz, as athletic directors and school district officials, would have had the authority to institute corrective measures on the district's behalf.  Certainly, as athletic directors, they would have supervisory powers over their coaches, of which, as a Freshman Coach for The Woodlands High School, Felicia was one.

(Docket Entry No. 46, Ex. A).  CISD objects to Hinojosa's statements about the athletic directors' supervisory authority over Shupp and argues that King has failed to present competent summary judgment evidence that the school district charged Willig and or Heintz with authority to address teacher-student sexual harassment.

The copy of the CISD policy in the record sets forth the school district's Title IX compliance procedure.  The CISD policy does not identify athletic directors as employees with supervisory authority or responsibility for responding to teacher-student sexual harassment.  The CISD policy states in relevant part:

> Any District employee who receives information about sexual harassment or sexual abuse of a student that may reasonably be characterized as known or suspected child abuse or neglect shall make the reports to appropriate authorities, as required by law . . . . An employee who suspects or knows that a student is being sexually harassed or sexually abused by a school employee or by another student shall inform his or her principal, immediate supervisor, or the Title IX coordinator.

(Docket Entry No. 39, Ex. E-2).  The CISD policy defines the Title IX coordinator as "a District employee who has responsibility to assure District compliance with the requirements of Title IX.  The coordinator will investigate or oversee an investigation of a complaint alleging violations of Title IX." (Docket Entry No. 39, Ex. E-2).  King does not suggest, and the record does not support an inference, that the athletic directors at the high school were "Title IX coordinators."  In other sections, the policy refers to the principal and the Title IX coordinator as the two employees responsible for investigating and resolving sexual harassment complaints.  King's previous position that the school district vested the principal with the supervisory authority to remedy sexual harassment is consistent with the CISD policy.

The record is unclear as to whether the athletic directors at the high school were Shupp's "immediate supervisors."  Shupp was a coach at the junior high school.  Although some junior high school girls played on high school teams, Hinojosa's statement about Willig and Heintz appears to be that if Shupp had been hired for the position at The Woodlands High School, Willig and Heintz would have had supervisory authority over her.[4]  Shupp was

---

[4] Although an athletic director may supervise coaching activities and have responsibility for coaching assignments, the record evidence shows that the school principal is responsible for teacher misconduct involving a student.  King deposed Gregory Poole, a CISD principal and former athletic director at a middle school, and questioned Poole about an athletic director's supervisory authority over coaches.  The deposition transcript states in part as follows:

> Q:     So, is it fair to say, that you would have been over [William Shupp] for two years, the last two years of your athletic directorship?
>
> A:     Yes.  It's fair to say, as athletic director.  Certainly the principal is more his administrator –but supervisor, but I was over him in the capacity of coaching.

not hired to fill the high school position; she remained on the staff of the junior high school.

King argues that the record reveals that Willig and Heintz "caused her to be demoted to a

Junior High position." (Docket Entry No. 46).  The record does not support King's argument

that Willig and Heintz "demoted" Shupp.  In the summer of 2000, Shupp resigned from her

coaching position at McCullough Junior High.  Her resignation letter lists "staying home

with son" as the reason.  Shupp later accepted a position at CISD's Branch Crossing Middle

School teaching seventh-grade English.  (Docket Entry No. 32, Ex. H-10).

The statement in Hinojosa's affidavit that "[b]oth Weldon Willig and Karen Heintz,

as athletic directors and school district officials, would have had the authority to institute

corrective measures on the district's behalf," is conclusory and, on its face, speculative.  It

is not competent summary judgment evidence and, even if considered, does not create a

triable issue of fact as to the athletic directors' supervisory authority.  *See Clark v. America's*

*Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir. 1997)("Unsupported allegations or

affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions

of law are insufficient to defeat a motion for summary judgment."); FED.R.CIV.P.

56(c)("Supporting and opposing affidavits shall be made on personal knowledge, shall set

forth such facts as would be admissible in evidence, and shall show affirmatively that the

affiant is competent to testify to the matters stated therein.").

---

(Docket Entry No. 32, Ex. G, p. 25, ll. 5-10).  Poole's testimony is consistent with the other evidence in the record that identifies the school principal as having the ultimate authority to respond to and remedy teacher-student sexual harassment.

Even if King had raised a fact issue as to whether Willig and Heintz had supervisory authority over Shupp, King has failed to present evidence raising a fact issue that Willig and Heintz had actual knowledge of the sexual relationship.  Hinojosa attributed that knowledge to Stockton in her first affidavit.  King suggests that Stockton told Heintz and Willig, which led to their decision not to hire Shupp.  This court has already found that the evidence as to Stockton failed to raise a fact issue as to whether he actually knew of the relationship between Shupp and King.  There is nothing in the record to suggest that Willig and Heintz had knowledge of the sexual abuse other than what Stockton may have told them.  Moreover, the summary judgment evidence shows that there are other explanations for Shupp's failure to receive the high school coaching position she sought.  Shupp had experienced unfavorable encounters with Heintz long before applying for the high school position in 2000.[5]  The evidence as to the decision not to hire Shupp for the junior varsity coaching position does not raise a fact issue as to CISD's liability under Title IX.

### D.    The McCullough Junior High Assistant Principal

This court assumes without deciding that as an assistant principal, Drummond was an official with the power to remedy discrimination on behalf of CISD.  The record, however, does not raise a fact issue as to whether she had actual notice of the abuse and acted with

---

[5]  The record contains an August 31, 1998 memo written by Shupp listing "incidents" she had with Heintz.  Shupp stated that she felt Heintz had behaved "very unprofessional" and that she did not understand Heintz's behavior toward her.  Shupp stated: "It has come to a point where I feel that documentation is necessary for my benefit. . . . I work hard and I am striving to move up, but me efforts are obviously not going to effect my status under Coach Heintz. . . . [R]ight now there seems to be many hindrances that are getting in the way of my advancement." (Docket Entry No. 32, Ex. H-10; Docket Entry No. 37, p. 31.

deliberate indifference in failing to take effective action to stop it.  *See Dallas Indep. Sch. Dist.*, 220 F.3d at 384.  The record does not provide a basis for concluding that Drummond had more knowledge about the sexual relationship than Stockton or should have taken steps beyond the 1998 meeting Drummond and Stockton had with Shupp.

Drummond told the Montgomery County investigators that she had not heard any rumors about Shupp and any student. (Docket Entry No. 32, Ex H-9, p. 8).  As this court previously noted, the police investigation and evidence submitted by the parties did not indicate that rumors of an inappropriate relationship between King and Shupp circulated among the faculty.   Jane Allen, a teacher at McCullough, also specifically told the Montgomery County investigators that she had not heard any rumors about Shupp and any student. (Docket Entry No. 32, Ex H-9, p.8).

Stockton and Drummond met with Shupp during the 1998-1999 school year and asked her if she was having an inappropriate relationship with a student and warned her to keep her relationships with students professional at all times.  (Docket Entry No. 27, Ex. B).  Meeting with the allegedly offending employee to confront and warn the employee does not show deliberate difference. *See Dallas Indep. Sch. Dist.,* 220 F.3d at 387-88 (noting that warning the teacher identified may preclude liability even though the warning was ineffective). Because the undisputed facts in the summary judgment record show that Drummond no more knowledge of the sexual abuse than Stockton,  King has failed to raise a fact issue as to CISD's liability under Title IX based on Drummond's knowledge and response.

## IV.    The Motion to Enlarge Time

King argues that because discovery was limited to Don Stockton's knowledge, she is entitled to additional time to conduct discovery on the knowledge and authority of the five employees identified in her response. (Docket Entry No. 46, p. 6).  King has failed to make any showing that the additional discovery she seeks is likely to create a genuine issue of material fact. *See Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (a nonmovant seeking relief under Rule 56(f) "must show (1) why she needs additional discovery and (2) how that discovery will create a genuine issue of material fact"); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004) (the nonmovant cannot "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts").

The discovery that King conducted into the information available to Stockton and the responsive actions he took was limited, but provided significant information about the information generally available within the schools King attended.  In addition, the discovery explored the school board policy regarding the officials who are charged as supervisory officials under Title IX.  The summary judgment record contains the file created during the Montgomery County Sheriff's Department investigation of Shupp in 2002, after King reported their sexual relationship.  The file contains statements from Ruth Stayton; Jane Allen, a McCullough Junior High School teacher; Gail Drummond; Don Stockton; and Felicia Shupp.  The record also contains affidavits from William Shupp and Teresa Hinojosa,

and excerpts from the depositions of Stockton, Stayton, and Gregory Poole.  In short, King

has conducted significant discovery.  She has failed to meet the burden necessary to obtain

a continuance for further discovery under Rule 56(f).  The undisputed facts in the summary

judgment record reveal that, as a matter of law, none of the five individuals King identifies

could qualify as supervisory officials with actual knowledge of the abuse who could trigger

CISD's liability under Title IX.  King's motion to enlarge time is denied.

**V.      Conclusion**

     CISD's motion for summary judgment is granted.  Counsel for defendants is to

submit a statement identifying any remaining issues or a proposed form of final judgment,

no later than August 12, 2005.

     SIGNED on July 15, 2005, at Houston, Texas.

_____

Lee H. Rosenthal

United States District Judge